Joshua W. Carden, SBN 021698
Joshua Carden Law Firm, P.C.
16427 North Scottsdale Road, Suite 410
Scottsdale, AZ 85254
joshua@cardenlawfirm.com
(480) 454-1100
(480) 454-1101 (Fax)
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lisa Fry,<br><br>    Plaintiff,<br><br>v.<br><br>Touchmark at the Ranch, LLC, Touchmark, LLC, and Touchmark Living Centers, Inc.<br><br>    Defendants. | **ORIGINAL COMPLAINT**<br>**(JURY TRIAL REQUESTED)** |

Plaintiff Lisa Fry, by and through the undersigned counsel, hereby seeks relief under Title VII, the Age Discrimination in Employment Act, and the Arizona Civil Rights Act, as follows:

**PARTIES**

1. Plaintiff Lisa Fry was at all relevant times herein a resident of Yavapai County, Arizona, and an "employee" of Touchmark at the Ranch, LLC and/or Touchmark, LLC for purposes of Title VII, the ADEA, and ACRA.

2. Defendant Touchmark at the Ranch, LLC ("Touchmark") is a foreign limited liability company at all relevant times conducting its business in Yavapai County, Arizona.

3. Defendant Touchmark, LLC is a foreign limited liability company at all relevant times conducting its business in Yavapai County, Arizona.

4. Defendant Touchmark Living Centers, Inc. is a foreign corporation at all relevant times conducting its business in Yavapai County, Arizona.

5. All three Defendants are managed together, held out to the public as a combined unit, and in all other respects constitute a "joint enterprise" or "joint employer" for purposes of

1

the various causes of action listed herein.

6. All Defendants (collectively referred to herein as "Touchmark") were thus an "employer" of Plaintiff within the meaning and purposes of Title VII, ADEA, and ACRA, at all times material to this action.

7. At all times pertinent to this Complaint, Touchmark's managerial employees were acting within the course and scope of their employment with Touchmark; and as a result thereof, Touchmark is responsible and liability is imputed for the acts and omissions of its managerial employees, as alleged herein, under the principles of *respondeat superior*, agency, and/or other applicable law.

8. All acts alleged in this Complaint occurred in Yavapai County, Arizona.

## JURISDICTION AND VENUE

9. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331.

10. The unlawful employment practices described herein were committed within the State of Arizona, on Defendant's premises located in Yavapai County, State of Arizona.

11. Accordingly, venue in this Court is proper pursuant to 28 U.S.C. § 1391(b).

## ALLEGATIONS COMMON TO ALL CLAIMS

12. Touchmark provides housing and services to senior adults, including health care services to those who need assistance with daily living due to physical and/or cognitive limitations.

13. Touchmark employees more than 100 employees at its Prescott location, and well over 500 employees throughout the country.

14. Touchmark employed Ms. Fry at its Prescott location beginning in November 2016, as the first Director of the not-yet-opened Health and Fitness Club.

15. Her primary duties were to get the club opened, create and manage the operational protocols, grow membership and run the operations of this newly-built Club.

16. Based on her 30 years of experience in the industry, she did that and did it well.

17. Doug Libby was hired by Touchmark as the Executive Director on May 4, 2018 and became Ms. Fry's supervisor.

18. Ms. Fry was 50 years old at that time.



19. Early on, Mr. Libby began issuing instructions and directives that were legally questionable or outright unsafe.

20. For example:

a. In October 2018, Mr. Libby relayed that the corporate office in Oregon (home of Touchmark LLC and Touchmark Livings Centers, Inc.) had issued instructions that the gym Ms. Fry supervised was not to encourage residents who have assistive devices (walkers, wheelchairs) to use the health club as they wanted to keep it "young looking";

b. In February 2019, Mr. Libby advised Ms. Fry to "back" another employee's story that the locker room floors were not slippery in response to a "slip and fall" incident involving a member; and

c. In that same month, Libby reprimanded Ms. Fry for closing the club during a snow storm with over 2 feet of snow, in what was later classified as a county-wide state of emergency.

21. Ms. Fry respectfully challenged such instructions and directives, and raised other concerns:

a. She refused to support the exclusion of individuals with assistive devices on the basis of ethics and ADA regulations, and informed Libby that this behavior could lead to corrective action by ADA regulatory agency;

b. She informed Libby that she refused to lie for an employee in response to the slip and fall incident, having previously notified Touchmark leadership that the floors were unsafe and that members were at risk for falls;

c. She instituted monthly safety trainings for her department, and was the only department to do so until she notified Libby; and

d. She stood by her decision to close the club for the safety of the members and staff.

22. In his responses and supervision of Ms. Fry, Mr. Libby made it painfully obvious that he did not like it when an independent woman near his own age stood up to him instead of acquiescing to his every demand.

23. On or about July 25, 2019, Mr. Libby issued a counseling memo to Ms. Fry (with no prior occurrences under Touchmark's disciplinary policies) and told her that she needed to resign



and seek other employment.

24. The counseling memo contained little in the way of specifics – things like "need to be more flexible" with no examples - except that it required Ms. Fry to attend subsequent meetings with Libby.

25. Ms. Fry had never had a performance review with Libby at that point, nor had Libby conducted Touchmark's required "Team Effectiveness Discussion."

26. Ms. Fry reported the sudden and vague discipline to HR, but HR took no action.

27. Ms. Fry showed up for the scheduled meetings with Libby.

28. Libby did not even attend the first scheduled meeting on the counseling memo.

29. Ms. Fry attempted to discuss the memo or get further explanation by email, but Libby sent an email back saying, *inter alia*, "The corrective action and points mentioned stand."

30. At the two subsequent meetings, he made it clear that he was not interested in actually discussing the memo or improving Ms. Fry's performance.

31. When Ms. Fry attempted to bring it up, Libby just reiterated that she was not a good fit and needed to transition out of the company.

32. Libby, and one other co-worker, made it clear that the decision to terminate Ms. Fry had already been made several months before the counseling memo had issued.

33. On August 16, 2019, Libby finalized Ms. Fry's termination.

34. Ms. Fry was immediately replaced by a younger male co-worker in his 30s, with vastly less experience than Ms. Fry.

35. Upon information and belief, Ms. Fry was terminated because of her age and/or her sex.

36. Ms. Fry dual-filed a charge of discrimination on September 27, 2019. A true and correct copy of that charge is attached hereto as Exhibit A.

37. The Arizona Attorney General Civil Rights Division investigated the charge, which included age and sex.

38. On June 25, 2020, the Attorney General Civil Rights Division issued a notice of suit rights to Ms. Fry. A true and correct copy of the notice is attached hereto as Exhibit B.



39. Ms. Fry has filed this lawsuit within 90 days of receiving her notice of suit rights and within 1 year of filing her charge of discrimination.

40. To preserve Ms. Fry's state law claim, this case is being filed prior to receipt of the EEOC Notice of Suit Rights – this complaint will be amended to include that document upon receipt.

41. All conditions precedent to the filing of this lawsuit have occurred or been satisfied.

**FIRST CAUSE OF ACTION – TITLE VII DISCRIMINATION**

42. By reference hereto, Plaintiff hereby incorporates the preceding paragraphs.

43. Plaintiff is a member of a protected class: female.

44. As described above, Plaintiff was subject to unlawful discrimination in violation of Title VII in that she was held to a different standard than her non-female co-workers by her supervisor and replaced by a male co-worker – disparate treatment because of her sex.

45. As a direct and proximate result of Touchmark's conduct, Plaintiff has lost wages and benefits from her employment, both past and future.

46. As a direct and proximate result of Touchmark's conduct, Plaintiff has further sustained damages in the form of emotional distress.

47. Touchmark's conduct was malicious, done with reckless indifference, and/or performed with an evil mind so as to entitle Plaintiff to punitive or exemplary damages.

**SECOND CAUSE OF ACTION – ADEA AGE DISCRIMINATION**

48. By reference hereto, Plaintiff hereby incorporates the preceding paragraphs.

49. Plaintiff is over the age of 40.

50. As described above, Plaintiff was subject to unlawful discrimination in violation of the ADEA in that she was held to a different standard than her non-female co-workers by her supervisor, and was replaced after termination by a much younger co-worker – disparate treatment because of her age.

51. As a direct and proximate result of Touchmark's conduct, Plaintiff has lost wages and benefits from her employment, both past and future.

52. Touchmark's conduct was willful, thus entitling Plaintiff to an award of liquidated



damages under the ADEA.

## THIRD CAUSE OF ACTION – ACRA AGE DISCRIMINATION

53. By reference hereto, Plaintiff hereby incorporates the preceding paragraphs.

54. Plaintiff is over the age of 40.

55. As described above, Plaintiff was subject to unlawful discrimination in violation of the Arizona Civil Rights Act in that she was held to a different standard than her younger co-workers by her supervisor, and was replaced after termination by a much younger co-worker – disparate treatment because of her age.

56. As a direct and proximate result of Touchmark's conduct, Plaintiff has lost wages and benefits from her employment, both past and future.

## JURY TRIAL DEMANDED

57. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment as follows:

A. Declaring that the acts and practices complained of herein are in violation of federal and/or state law;

B. Directing Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Plaintiff's employment or employment opportunities;

C. Directing Defendant to place Plaintiff in the position she would have occupied but for Defendant's unlawful actions, and make her whole for all earnings she would have received but for Defendant's discriminatory treatment, including, but not limited to, back pay, front pay, pension, and other lost benefits;

D. Awarding Plaintiff compensatory and punitive damages in an amount to be determined by the jury;

E. Awarding Plaintiff liquidated damages in an amount equal to her other economic damages;

F. Awarding Plaintiff pre- and post-judgment interest, the costs of this action, and



1. reasonable attorneys' fees as provided by the statutes providing the causes of action cited herein; and

    G.    Granting such other and further relief as this Court deems necessary and proper.

Respectfully submitted on this 22nd day of September, 2020,

                                             JOSHUA CARDEN LAW FIRM, P.C.

                                             By: <u>s/Joshua W. Carden</u>
                                             Joshua W. Carden
                                             *Attorneys for Plaintiff*
                                             *Lisa Fry*